JOHN GOFF AND JOHN G. BALLENTINE v. J. W. DABBS, et als.

1. CHANCERY PRACTICE. *Usury. Estoppel.* D confessed judgments to secure the payment of a usurious debt to G, who afterwards filed his bill and attached D's land. On D's filing a cross-bill it is held, that, after confessing judgments and not pleading the usury, it was too late to resort to a Court of Chancery for relief.

2. FRAUDULENT CONVEYANCE OF LAND. A conveyance of the land attached, from the agent, tenant and solicitor of the defendant to the daughter of the defendant, held to be without consideration, and fraudulent as against the complainant and other of defendant's creditors.

Goff v. Dabbs.

3. SAME. *Same.* The defendant not making out the allegations in his cross-bill, of fraud in the sale of the land to him, the land is decreed to be subject to the claims of the complainants.

FROM DAVIDSON.

Appeal from the Chancery Court. S. G. FRIER-SON, Chancellor.

JORDAN STOKES and E. H. EAST for Goff.

JOHN C. GAUT for Dabbs.

NICHOLSON, C. J., delivered the opinion of the Court.

Goff and Ballentine filed separate bills to subject a tract of land of J. W. Dabbs to sale for the satisfaction of their respective claims against Dabbs. The two causes were consolidated and heard together.

1. The claim of Goff was resisted by Dabbs, on the ground that it was usurious. The debt originated in a loan of $3,000 in 1857, at 12 per cent. Payments were made and the note renewed, until the last note given was for $2,720. To secure Goff in the payment of this note Dabbs confessed judgments before a Justice of the Peace, on five notes, substituted in place of the large note. It was agreed that executions should issue on these confessed judgments, and be levied on the property of Dabbs. In violation of the agreement, Dabbs had the judgments stayed by an insufficient stayor. Thereupon, Goff filed his bill and

attached the land. Dabbs, by cross-bill, seeks to be relieved of the usury in the original note. The Chancellor (Reid) held that, after having confessed judgments, and not pleading the usury, it was too late to resort to a Court of Chancery for relief. There was no error in this—the cases in which a confession of judgment is no bar to subsequent relief in equity, are those in which the confession of judgments is part of the contract of borrowing and lending. This is not such a case.

2. It appears that before Goff filed his attachment bill the land attached had been sold under execution in favor of Gleaves, and bought in by Gleaves for his debt. Before the time for redeeming had elapsed, Gleaves assigned his bid to John S. Brien, to whom the Sheriff made a deed, after the expiration of the two years. Brien's advance was paid to him by Dabbs, and by direction of Dabbs, Brien conveyed the lands to A. H. Dabbs, a brother of J. W. Dabbs, and he in turn, conveyed it to the only daughter of J. W. Dabbs, and upon her death the title descended to his infant daughter, who is made a party. The Chancellor held, that, as · Brien was the agent, tenant and solicitor of J. W. Dabbs, at the time he took the assignment from Gleaves and the deed from the Sheriff, he took the title for J. W. Dabbs, and the conveyance by Brien to A. H. Dabbs, and by him to J. W. Dabbs' daughter, Lou C., being without consideration and fraudulent as against J. W. Dabbs' creditors, that complainant was entitled to have his claim satisfied

out of the land.    We think the proof fully sustains this conclusion of the Chancellor.

3. Ballentine's claim was based on three notes of $3,000, each given by J. W. Dabbs for a tract of land in Mississippi.    Dabbs, by a cross-bill, sought to get clear of these notes, upon the ground that Ballentine was guilty of fraud in the sale of the Mississippi land. Dabbs' allegations were that he bought the land as a farm for planting purposes, but that Ballentine concealed from him the fact that a large portion of the land was divided into lots, with streets and alleys, with one or two lots for a church and school-house, constituting part of the town of Belmont.

The Chancellor held, that Dabbs had entirely failed to sustain his allegations as to the fraud charged in the sale.    We think the proof fully supports the holding of the Chancellor.    The decree of the Chancellor was based upon these several conclusions as to the facts, whereby it was decreed that the land was subject to the claims of Goff and Ballentine, and the same was ordered to be sold accordingly.

The decree will be affirmed with costs.